# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE LEIGH ANDRENOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-743 |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | Judge Cathy Bissoon |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

### I. **MEMORANDUM**

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 8) will be granted, and Defendant's Motion for Summary Judgment (Doc. 10) will be denied.

Plaintiff Stephanie Leigh Andrenok ("Andrenok") protectively applied for supplemental security income ("SSI") benefits on March 25, 2010, alleging that she had become "disabled" on January 16, 2010. (R. at 128, 141). Pennsylvania's Bureau of Disability Determination denied the application on July 12, 2010. (R. at 75). Andrenok responded on July 20, 2010, by filing a request for an administrative hearing. (R. at 88-90). On August 23, 2011, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") Leslie Perry-Dowdell. (R. at 49). Andrenok, who was represented by counsel, appeared and testified at the hearing. (R. at 53-67). Dr. Charles Cohen, an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. (R. at 67-71). In a decision dated September 15, 2011, the ALJ determined that Andrenok was not "disabled" within the meaning of the Act. (R. at 8-21).

On November 3, 2011, Andrenok sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 6-7). The Appeals Council denied the request for review on April 5, 2013, thereby making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner") in this case. (R. at 1). Andrenok commenced this action on May 30, 2013, seeking judicial review of the Commissioner's decision. (Docs. 1 & 2). Andrenok and the Commissioner later filed cross-motions for summary judgment. (Docs. 8 & 10). Those motions are now ripe for adjudication.

Andrenok was born on February 24, 1988. (R. at 53). She graduated from high school in 2007 and subsequently received an associate's degree in business administration from the Laurel Business Institute.[1] (R. at 53, 59). After finishing school, Andrenok periodically worked as a customer service representative and telemarketer for several different employers. (R. at 54-55, 67, 148). She generally performed her duties on a part-time basis. (R. at 55).

Andrenok was involved in a motor vehicle accident on December 22, 2009. (R. at 230-233, 245, 293-295). The accident apparently occurred because a vehicle operated by Andrenok slid on a patch of ice and crashed into a telephone pole. (R. at 245). In the immediate aftermath of the accident, Andrenok was treated at Uniontown Hospital's emergency room. (R. at 230-233, 245, 293-295). A computed tomography ("CT") scan of her head yielded normal results. (R. at 231, 293). X-rays of her spine detected no evidence of an acute fracture. (R. at 232-233, 294-295).

After the accident, Andrenok continued to experience pain in her back. (R. at 245). On January 7, 2010, she informed her treating physicians that her pain medications were causing

---

[1] Although Andrenok was supposed to finish high school in 2006, she testified that she had actually graduated in 2007 after being "held back." (R. at 59). The record indicates that she obtained her associate's degree in 2009. (R. at 147).

her to feel nauseated. (R. at 245). Andrenok stopped working on January 16, 2010. (R. at 147). At the hearing, Andrenok testified that she had stopped working because of panic attacks and migraine headaches. (R. at 55). She stated that she had been experiencing panic attacks since reaching the age of twelve. (R. at 55). When questioned about the duration of her panic attacks, Andrenok asserted that she typically needed to spend up to five hours in bed after suffering a panic attack. (R. at 56-57). She complained of "full-blown" panic attacks occurring on a weekly basis. (R. at 57). Andrenok further testified that her panic attacks typically left her with a "nauseous feeling" and weakness in her legs. (R. at 57). She described a correlation between her panic attacks and migraine headaches, stating that they would usually "try to fight each other off." (R. at 58).

On June 22, 2010, Dr. Thomas E. Andrews performed a consultative psychological evaluation of Andrenok in connection with her application for SSI benefits. (R. at 321-328). During the evaluation, Andrenok "was able to perform all tasks and respond to questions without any obvious impairment to her concentration or her focus of attention." (R. at 328). She exhibited "no signs of anxiety." (R. at 327). Based on the findings of his evaluation, Dr. Andrews reported that Andrenok had "marked" limitations in her abilities to make judgments concerning simple work-related decisions, respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors and co-workers. (R. at 322). Andrenok was deemed to be "moderately" limited in her abilities to interact appropriately with members of the general public and understand, remember and carry out detailed instructions. (R. at 322). Dr. Andrews recommended that Andrenok undergo psychotherapy focusing on her "panic problems." (R. at 328).

Dr. Edward Jonas, a non-examining psychological consultant, opined on June 30, 2010, that Andrenok was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. at 345). In the narrative portion of his report, Dr. Jonas explained:

> The claimant's ability to understand and remember complex or detailed instructions is limited, however [sic], she would be expected to understand and remember simple one and two step instructions. She can make simple decisions. She has a history of frequent panic attacks. She is capable of asking simple questions and accepting instruction. Moreover, she evidences some limitation in dealing with work stresses and public contact.

(R. at 345). Dr. Jonas found some of the limitations described in Dr. Andrews's assessment to be "without substantial support from the other evidence of record." (R. at 345). Dr. Paul Reardon, a nonexamining medical consultant, reported on July 2, 2010, that Andrenok had no physical limitations. (R. at 347-353).

Andrenok continued to experience pain in her back during the fall of 2010. (R. at 363). She complained that chiropractic treatment had made her condition worse. (R. at 363). On November 22, 2010, a magnetic resonance imaging ("MRI") scan of Andrenok's lumbar spine yielded normal results. (R. at 469).

Dr. Melissa Albert, a treating psychiatrist, completed a questionnaire about Andrenok's mental limitations on December 3, 2010. (R. at 393-397). In the questionnaire, Dr. Albert asserted that Andrenok had "extreme" limitations in her maintenance of social functioning and in her maintenance of concentration, persistence or pace. (R. at 396). Andrenok's activities of daily living were described as being "markedly" limited. (R. at 396). Dr. Albert reported that Andrenok had experienced four or more extended episodes of decompensation during the previous twelve months. (R. at 396). Andrenok's limitations were attributed to a "residual

4

disease process that ha[d] resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [her] to decompensate." (R. at 397). Dr. Albert predicted that Andrenok would need to miss more than four days of work per month if she were to be employed on a full-time basis. (R. at 397). At the end of the questionnaire, Dr. Albert responded in the affirmative when asked whether Andrenok could manage benefits in her own best interest. (R. at 397).

After arguing with her mother on February 16, 2011, Andrenok consumed several doses of Trazadone. (R. at 429). Believing the overdose to be a suicide attempt, Andrenok's mother contacted emergency medical personnel. (R. at 429). Andrenok was involuntarily committed to the Southwest Regional Medical Center pursuant to 50 PA. STAT. § 7302. (R. at 429). Upon admission, Andrenok denied having "suicidal or homicidal ideations." (R. at 428). She stated that she had taken the pills only to deescalate the argument and get some sleep. (R. at 428). Andrenok acknowledged that she could have adequately managed her irritability without resorting to self-harm. (R. at 432). She was discharged from inpatient care three days later. (R. at 432).

The pain in Andrenok's lower back persisted. (R. at 488). Several medications failed to alleviate her symptoms. (R. at 485-486, 488). Andrenok was told that some of her pain had been caused by the "poor posture" that she had exhibited while sitting on her bed to use a laptop computer. (R. at 483). At the hearing, Andrenok complained of "constant pain" and stated that it was "hard for [her] to stand for long periods of time." (R. at 62). She testified that her prescribed medications had failed to decrease her pain. (R. at 63). At that time, Andrenok was preparing to be evaluated at a pain management clinic. (R. at 62-63).

5

At the second step of the sequential evaluation process, Andrenok was found to be suffering from panic attacks, obesity, gastroesophageal reflux disease ("GERD"), back pain and attention deficit hyperactivity disorder ("ADHD"). (R. at 13-14). Her panic attacks and obesity were deemed to be "severe" under the Commissioner's regulations. (R. at 13-14). The ALJ concluded that Andrenok's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-15). In accordance with 20 C.F.R. § 416.945, the ALJ assessed Andrenok's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work activity, lifting up to 20 pounds occasionally, and lifting and carrying up to 10 pounds frequently. The claimant can stand and walk for about six hours and sit for up to six hours in an eight-hour workday with normal breaks. She can understand, remember and carry out simple instructions. She can make judgments on simple work-related decisions. She needs to be isolated from the public with only occasional supervision and only occasional interaction with coworkers.

(R. at 15). Given this assessment, the ALJ determined that Andrenok could work as a cleaner, an inspector or a packer. (R. at 20). Dr. Cohen's testimony established that those jobs existed in the national economy. (R. at 68).

In her decision, the ALJ afforded "little weight" to Dr. Andrews's examination report, finding it to be "without substantial support from the other evidence of record." (R. at 19). Although she noted that Dr. Albert had found Andrenok to be restricted by "extreme" and "marked" limitations, the ALJ observed that Dr. Albert had indicated that Andrenok could manage benefits in her own best interest. (R. at 19). The ALJ accorded "considerable weight" to Dr. Jonas's assessment, finding it to be "consistent with the evidence of record." (R. at 19).

Andrenok challenges the ALJ's findings at the third and fifth steps of the sequential evaluation process. (Doc. 9 at 7-16). Both issues relate to the ALJ's failure to properly weigh

6

Dr. Albert's opinion in determining Andrenok's work-related abilities and limitations. (*Id.*). Under the "B" criteria of Listing 12.06, the ALJ determined that Andrenok had "mild" restrictions in her activities of daily living, "moderate" difficulties in maintaining her social functioning, and "mild" difficulties in maintaining her concentration, persistence or pace. (R. at 15). The ALJ also concluded that Andrenok had not experienced any extended episodes of decompensation. (R. at 15). Those findings contrasted sharply with Dr. Albert's questionnaire responses. (R. at 396). In determining Andrenok's residual functional capacity, the ALJ did not explain what weight, if any, she was giving Dr. Albert's opinion. (R. at 19).

Opinions expressed by treating and examining physicians do not necessarily bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). When conflicting medical assessments are presented, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). In resolving evidentiary conflicts, however, the administrative law judge must explain his or her reasons for rejecting any pertinent and probative evidence that is not credited. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008); *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003). This explanation facilitates the meaningful judicial review contemplated under the Social Security Act. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-122 (3d Cir. 2000).

Furthermore, the Court of Appeals for the Third Circuit generally looks with disfavor on administrative decisions that credit the opinions of nonexamining consultants over those of treating and examining sources. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). The probative force of any medical opinion can only be determined in

relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). An assessment provided by a nonexamining consultant will not normally constitute "substantial evidence" of a claimant's ability to work when it is contradicted by reports prepared by treating and examining physicians. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is especially true in cases involving claimants with mental impairments. Under normal circumstances, a mental health professional cannot "formulate medical opinions based upon objective findings derived from objective clinical tests." *Sheehan v. Metropolitan Life Insurance Co.*, 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005). "In contrast to some physical impairments, which can be verified or discounted solely by reference to reports of objective medical tests, mental impairments are generally identified on the basis of a psychiatric professional's interactions with an impaired individual." *Haisley v. Sedgwick Claims Management Services, Inc.*, 776 F.Supp.2d 33, 50 (W.D. Pa. 2011).

The foregoing principles compel the conclusion that the ALJ's decision in this case is not supported by substantial evidence. The ALJ rejected the opinions of Dr. Andrews and Dr. Albert solely on the basis of Dr. Jonas's consultative report. (R. at 18-19). In so doing, the ALJ failed to articulate her reasons for rejecting Dr. Albert's findings. (R. at 19). The mere fact that Andrenok was deemed to be capable of managing benefits in her own best interest does not necessarily mean that she was able to maintain a full-time job.

"An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010). That standard is not satisfied in this case. In response to a question posed by Andrenok's attorney, Dr. Cohen testified that no jobs existed in the national economy for an individual who

8

would miss more than four days of work per month and remain "off task" for roughly twenty percent of a typical workday. (R. at 71). The ALJ found this portion of Dr. Cohen's testimony to be irrelevant because she believed the limitations contained in the attorney's question to be in excess of those suffered by Andrenok. (R. at 20). Under the governing law, the ALJ was not required to accept every functional limitation *alleged* by Andrenok. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Dr. Cohen was never asked whether some of the less severe restrictions identified in Dr. Andrews's examination report would have precluded an individual from engaging in substantial gainful activity. The ALJ accommodated the "marked" interactive limitations by restricting Andrenok to a range of work involving no interaction with members of the general public and only occasional interaction with supervisors and co-workers. (R. at 15, 322). It is not clear whether the jobs described in Dr. Cohen's testimony could be performed by an individual who needs to remain in a work setting involving minimal levels of stress and relatively few changes in his or her daily routine. (R. at 67-71, 322). Because Andrenok's actual residual functional capacity may have fallen somewhere between that posited by her attorney and that found by the ALJ, the proper remedy in this case is a remand for further proceedings rather than a judicially-ordered award of benefits. *Diaz*, 577 F.3d at 504-507.

The Commissioner must "reopen and fully develop the record before rendering a ruling" on Andrenok's application for SSI benefits. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). It is worth noting that the ALJ appears to have minimized the effects of Andrenok's back injury by finding it to be a "nonsevere" impairment. (R. at 13-14). The record is replete with documentary evidence suggesting that Andrenok continued to suffer from persistent back pain in the aftermath of her motor vehicle accident. (R. at 363, 422, 474-475, 478, 486, 488). At the hearing, Andrenok confirmed that she

9

had scheduled an appointment with a physician at a pain management clinic. (R. at 62-63). The second step of the sequential evaluation process has been described as "a *de minimis* screening device" designed to quickly "dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003). Because the second step of the process is relatively easy for a claimant to satisfy, its invocation by the Commissioner as a basis for denying benefits is "certain to raise a judicial eyebrow" in all but the most frivolous cases. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d Cir. 2004). Since Andrenok's panic attacks and obesity were found to be "severe" impairments, her claim was not denied at the second step. The Court also acknowledges Dr. Cohen's testimony discussing the jobs existing in the national economy at the "sedentary" level of exertion. (R. at 68-69). Nonetheless, the Commissioner must carefully consider the effects of Andrenok's back impairment in determining her work-related abilities and limitations. When a claimant has both exertional and nonexertional limitations, the need for an accurate residual functional capacity assessment is especially apparent. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982).

Consistent with the foregoing, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 8**) is **GRANTED**, Defendant's Motion for Summary Judgment (**Doc. 10**) is **DENIED**, and this case is **REMANDED FORTHWITH** for further administrative proceedings as described herein.

IT IS SO ORDERED.

May 14, 2014                                          s\Cathy Bissoon
                                                      Cathy Bissoon
                                                      United States District Judge

cc (via ECF email notification):

All counsel of record